Slip Op. 08-128

UNITED STATES COURT OF INTERNATIONAL TRADE

```
-----------------------------x
NAKORNTHAI STRIP MILL PUBLIC   :
COMPANY LIMITED,               :
                               :
                Plaintiff,     :
                               :   Before: Pogue, Judge
        v.                     :   Court No. 07-00180
                               :
UNITED STATES,                 :
                               :
                Defendant,     :
                               :
UNITED STATES STEEL            :
CORPORATION,                   :
                               :
                Defendant-     :
                Intervenor.    :
-----------------------------x
```

**OPINION**

[Commerce's determination sustained in part and remanded in part.]

Dated: November 24, 2008

  Hughes, Hubbard & Reed LLP (Kenneth J. Pierce, Robert L. LaFrankie, Victor S. Mroczka) for the Plaintiff.

  Gregory G. Katsas, Acting Assistant Attorney General; Jeanne E. Davidson, Director, Patricia M. McCarthy, Assistant Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice (Jane C. Dempsey); Matthew D. Walden, Attorney, Of Counsel, Office of the Chief Counsel for Import Administration, U.S. Department of Commerce, for the United States Department of Commerce.

  Skadden, Arps, Slate, Meagher & Flom LLP (Robert E. Lighthizer, John J. Mangan, Jeffrey Gerrish, Luke A. Meisner) for the Defendant-Intervenor.

  **Pogue, Judge:** This is the court's second opinion in this matter reviewing whether Commerce's selection of the invoice date as the date of sale, for purposes of calculating an antidumping

duty, was supported by the administrative record.  Following the court's previous decision, <u>Nakornthai Strip Mill Pub. Co. v. United States</u>, 32 CIT ___, 558 F. Supp. 2d 1319 (2008) (hereinafter "the court's May 28 opinion"), the Department of Commerce ("Commerce") reconsidered, on remand, its original determination, but again chose to use the date of invoice rather than the date of contract as the date of sale. <u>Final Results of Redetermination Pursuant to Remand, Nakornthai Strip Mill Pub. Co.</u>, A-549-817, ADR 11/1/2004—10/31/2005 (July 28, 2008) ("<u>Remand Results</u>").  Plaintiff Nakornthai Strip Mill Public Company Limited ("Nakornthai")[1] now challenges Commerce's <u>Remand Results</u>, presenting the court with three grounds upon which it again seeks remand of the case.

After thorough review, the court finds that Commerce has once again failed to make a reasoned finding with respect to Nakornthai's specific evidence, and must therefore again remand this case.

## Background

Nakornthai filed the instant action to challenge Commerce's final results of administrative review of the antidumping order on Nakornthai's imports. <u>Certain Hot-Rolled Carbon Steel Flat Products from Thailand</u>, 72 Fed. Reg. 27,802 (Dep't Commerce May 17, 2007) (final results and partial rescission of antidumping duty

---

[1] Nakornthai is now known as G J Steel Public Co. Ltd., however, for consistency, this opinion will continue to refer to the company under its former name.

administrative review). As the review record revealed, the
original contract between Nakornthai and its wholesaler specified,
among other things, both an overall quantity tolerance and an
individual, per item, tolerance level. <u>Nakornthai</u>, 558 F. Supp. 2d
at 1322. A subsequent amendment removed the line-item tolerance
level from the contract, leading Commerce to conclude that this
change demonstrated that the contract's material terms were not
settled until the invoice date. <u>Id</u>. at 1328.[2] Nakornthai, however,
presented evidence that the contract amendment affected less than
0.1% of the total quantity of goods sold and shipped under the
contract, although the quantity shipped of the single, changed
line-item was 14.5% more than the upper end of the original
tolerance level and more than 25% above the specific line-item
quantity for that product. <u>Id</u>.

In its May 28 opinion,[3] the court affirmed Commerce's legal
conclusion, holding that Commerce's identification of potentially
"material terms of sale" of Nakornthai's contract was based on the
agency's reasonable interpretation of its own regulation. <u>Id</u>. at

---

[2] Commerce's determination was based on its applicable
regulation, 19 C.F.R. § 351.401(i)(2007) ("In identifying the
date of sale of the subject merchandise or foreign like product,
the Secretary normally will use the date of invoice, as recorded
in the exporter or producer's records kept in the ordinary course
of business. However, the Secretary may use a date other than the
date of invoice if the Secretary is satisfied that a different
date better reflects the date on which the exporter or producer
establishes the material terms of sale.")

[3] Familiarity with the court's May 28 opinion is presumed.

1327. However, the court held that Commerce's factual findings on the finality of the terms of sale were incomplete, and remanded the issue back to the agency for reconsideration. Id. at 1328-29. The court stated that "Commerce did not discuss or make a finding with regard to this [i.e., Nakornthai's] evidence, either on its own or when considered in light of the elimination of the tolerance levels in the contract." Id. at 1328. Therefore, the court could not determine whether the variation in quantities for one line-item was sufficient either to affect product mix in a significant way or to alter the dumping margin. Id. As such, the court remanded the case back to Commerce to make a factual finding "with regard to the significance of Nakornthai's evidence" and whether "the date the terms of the contract were essentially 'established' [at the date of contract] in light of the evidence submitted." Id. at 1328-29.

## Standard of Review

The court reviews remand determinations for compliance with the court's remand order. See NMB Sing. Ltd. v. United States, 28 CIT 1252, 1259-60, 341 F. Supp. 2d 1327, 1333-34 (2004) (affirming International Trade Commission's determinations on remand where the determinations were in accordance with law, supported by substantial evidence, and otherwise satisfied the remand order); see also Olympia Indus., Inc. v. United States, 23 CIT 80, 82, 36 F. Supp. 2d 414, 416 (1999) (affirming after "review[ing] Commerce's compliance with these instructions in its Remand

Results" and finding the determination to be supported by substantial evidence and in accordance with law). In addition, any factual findings on remand must be supported by substantial evidence and the agency's legal determinations must be in accordance with law. 19 U.S.C. § 1516a(b)(1)(B); see, e.g., Huaiyin Foreign Trade Corp. v. United States, 322 F.3d 1369, 1374 (Fed. Cir. 2003); AG der Dillinger Hüttenwerke v. United States, 28 CIT 94, 95, 310 F. Supp. 2d 1347, 1349 (2004) (holding remand determination to legal and factual standards set out in 19 U.S.C. § 1516a(b)(1)(B)). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Huaiyin Foreign Trade Corp., 322 F.3d at 1374 (internal citations omitted).

## Discussion

Nakornthai's Comments state its specific objections to Commerce's Remand Results. First, Nakornthai argues that Commerce did not adequately distinguish its Romanian Plate decision where similar facts lead to opposite results. Second, Nakornthai maintains that Commerce failed to make the evidentiary findings required by the court's May 28 opinion. Finally, Nakornthai contends that Commerce was required to consider its alternative date-of-sale arguments regarding the use of amended contract date and shipment date, as the court remand had replaced Nakornthai's prior failure to exhaust administrative remedies on this issue.

The court agrees that Commerce has again failed to make sufficient factual findings as required by the court's May 28 opinion, and thus must remand on this ground.  However, the court rejects Nakornthai's other arguments.  The court will discuss each issue in turn.

### I. Commerce Adequately Distinguished Romanian Plate

In its Remand Results, Commerce reasonably distinguished the facts of this case from the facts in Certain Cut-to-Length Carbon Steel Plate from Romania, 72 Fed. Reg. 6,522 (Dep't Commerce Feb. 12 2007) (final admin. review). See Issues and Decision Memorandum for the Administrative Review of Certain Cut-to-Length Carbon Steel Plate from Romania: Final Results of Antidumping Duty Administrative Review and Final Partial Rescission, A-485-803, ADR 08/01/2004-07/31/2005 (Feb. 2, 2007), available at http://ia.ita.doc.gov/frn/ summary/ROMANIA/E7-2216-1.pdf ("Romanian Plate").  Romanian Plate, although containing facts similar to this case and also applying 19 C.F.R. § 351.401(i)(2007), determined that a date earlier than that of the invoice was the proper "date of sale," where "one sale of a small quantity outside the specified quantity tolerance level" did not constitute a "material" change to the contract.  Nakornthai, 558 F. Supp. 2d at 1327-28 (citing Romanian Plate at 9).  Despite that change, Commerce concluded that the Romanian Plate parties agreed to their contract's material terms at the time of order acknowledgment, a date prior to the

invoice date, in part, because the parties intended to finalize the
material terms of sale at the earlier time. Romanian Plate at 7, 9.

As evidence, Commerce cited the specific language of the order
acknowledgment -- language that Commerce deemed to definitively
state "that there can thereafter be no changes in the terms of
sale" -- as well as affidavits from U.S. customers "declaring that
the order acknowledgments are understood as the parties' final
agreement on quantities and prices ordered." Id. at 7. Commerce
also highlighted evidence that the parties "decided to fix the U.S.
sales terms with the order acknowledgment to guarantee price
stability," given that there are often long lag times "between
order acknowledgment and invoice date." Id. at 8. Furthermore,
Commerce emphasized that the contract "did not undergo any
meaningful changes"; the record contained "no evidence of price
changes between the order acknowledgments and their respective
invoices" and, with the exception of "one sale of a small
quantity," the invoiced quantities were all within the order
acknowledgment's tolerance levels. Id. at 7. Hence, other than a
"small" quantity change in one sale, the contracts terms remained
the same. Id.

Nakornthai argues that "Commerce's attempt to distinguish
Romania[n] Plate . . . elevates form over substance" because,
although Romanian Plate involved no formal contract amendment,
"there were still changes to the contract" analogous to those in

the case at bar. Pl.'s Comments at 6, 7.  Nakornthai points out that its contract also involved long lag times between the order acknowledgment and invoice date, and that one of the sales in that case also involved a small change in quantity outside the specified tolerance level. Id. at 7.  Because of the similarities to the evidence presented in its case, Nakornthai asserts, Commerce must find that the small change in quantity was "not significant" just as the agency concluded in Romanian Plate. Id. at 6.

Nakornthai is, in part, correct. "Agencies have a responsibility to administer their statutorily accorded powers fairly and rationally, which includes not 'treat[ing] similar situations in dissimilar ways.'" Anderson v. U.S. Sec'y of Agric., __ CIT __, 462 F. Supp. 2d 1333, 1339 (2006) (quoting Burinskas v. NLRB, 357 F.2d 822, 827 (D.C. Cir. 1966)).  "Indeed, a principal justification for the administrative state is that in 'area[s] of limitless factual variations, like cases will be treated alike.'" Id. (quoting Nat'l Muffler Dealers Ass'n v. United States, 440 U.S. 472, 477 (1979) (internal citations omitted)).  "Courts will therefore not defer to an agency regulation or adjudicative decision when they produce results which are arbitrary, capricious, or manifestly contrary to the statutory scheme." Id.

Nevertheless, just because the evidence in a case could support two inconsistent conclusions, does not mean that the agency's findings are unsupported. Consolo v. Fed. Maritime Comm'n,

383 U.S. 607, 620 (1966). In addition, Commerce has "discretion to change its policies and practices as long as they are reasonable and consistent with their statutory mandate [and] may adapt its views and practices to the particular circumstances of the case at hand, so long as the agency's decisions are explained and supported by substantial evidence on the record." Trs. in Bankruptcy of N. Am. Rubber Thread Co. v. United States, __ CIT __, 533 F. Supp. 2d 1290, 1297 (2007). Accordingly, when departing from its own precedent, Commerce must explain its departure. See id. ("Commerce [must] attempt to distinguish the reasoning set forth in [prior cases] from the present case"); Trs. in Bankruptcy of N. Am. Rubber Thread Co. v. United States, __ CIT __, 558 F. Supp. 2d 1367, 1370 (2008) ("Generally, 'an agency action is arbitrary when the agency offer[s] insufficient reasons for treating similar situations differently.'"); Consol. Bearings Co. v. United States, 348 F.3d 997, 1007 (Fed. Cir. 2003) (Commerce acts arbitrarily and capriciously when it "consistently follow[s] a contrary practice in similar circumstances and provide[s] no reasonable explanation for the change in practice."); British Steel PLC v. United States, 127 F.3d 1471, 1475 (Fed. Cir. 1997) ("An agency is obligated to follow precedent, and if it chooses to change, it must explain why.").

Commerce, in this case, has adequately distinguished and reasonably explained its departure from Romanian Plate. While there are similarities between this case and Romanian Plate,

Commerce's <u>Remand Results</u> demonstrated several key distinguishing facts between the two cases. Whereas in <u>Romanian Plate</u> "there were no amendments at all to the order acknowledgment," Commerce found that Nakornthai's original contract was subject to several amendments[4] after the date of sale. <u>Remand Results</u> at 4. These amendments "reflect[] potential broad-sweeping changes to the terms of the contract, and provide[] limited certainty of the products to be shipped other than the aggregate of the total order." <u>Id</u>. at 9. In addition, Commerce noted that Nakornthai "has not provided any evidence to indicate that [Nakornthai] and its buyer understood that the contract or amended contracts represented the final agreement on quantities, prices, or delivery and payment terms." <u>Id</u>. at 4.  In contrast, the <u>Romanian Plate</u> contract specifically provided, and parol evidence demonstrated, that the parties intended that there would be no later changes in terms after the acknowledgment.

Nakornthai insists that its transactions suffer the same lag time highlighted in <u>Romanian Plate</u>.  But Commerce found the lag time persuasive in <u>Romanian Plate</u>, not because of its mere existence, but because the evidence demonstrated that the lag times caused one of the parties to explicitly fix the terms of the

---

[4] In its May 28 opinion, the court found Commerce reasonably interpreted its own regulations when it concluded that at least one of these amendments, eliminating the quantity per item tolerance level, was a potentially material change.  <u>Nakornthai</u>, 558 F. Supp. 2d at 1327.

contract in the acknowledgment. Nakornthai has provided no
evidence that such a lag time caused it in particular to take
similar measures. Moreover, Commerce decisions dictate that "a
long lag time is not the only determining factor for date-of-sale
purposes." Id. at 9; Certain Steel Concrete Reinforcing Bars from
Turkey, 72 Fed. Reg. 62,630 (Dep't Commerce Nov. 6, 2007) (final
admin. review and new shipper review and determination to revoke in
part).

     As Commerce has adequately explained its reasons for
distinguishing Romanian Plate, the court rejects Nakornthai's first
proffered ground for remand. The court pauses to note, however,
that just because Commerce's decision in Romanian Plate is
distinguishable on the facts from Nakornthai's case, and therefore
the same result is not required here, it does not follow that
Romanian Plate has no effect. In its May 28 opinion, the court
cited Romanian Plate for the more limited proposition that "[i]n
choosing a date of sale, Commerce weighs the evidence presented and
regularly determines the significance of any changes to the terms
of sales involved." Nakornthai Strip Mill Pub. Co. v. United
States, 32 CIT ___, 558 F. Supp. 2d 1319, 1327 (2008). This
standard practice is also demonstrated in Commerce's Certain Large
Diameter Carbon and Alloy Seamless Standard, Line and Pressure Pipe
From Mexico, 65 Fed. Reg. 39358 (Dep't Commerce June 26, 2000)
(final determination), and accompanying Issues and Decision

Memorandum, A-201-827, LFV 04/01/1998-03/31/1999 cmt. 2 (June 26,

2000), available at http://ia.ita.doc.gov/frn/summary/mexico/00-

16102-1.txt ("During verification of TAMSA's sales response, the

Department reviewed sales-related documentation ... indicating that

there was a slight change in the quantity shipped between the sales

acknowledgment date and the invoice date."). While the same result

is not required here by either decision, the same process of

evaluation, as the court shall now discuss, is so required.

## II.  Commerce Failed to Make a Finding of Significance with Regard to Nakornthai's Proffered Evidence

The court, in its May 28 opinion, determined that Commerce's

disposition of the case was "incomplete and must be remanded," as

Commerce failed to make "a factual finding with regard to the

significance of Nakornthai's evidence or the date the terms of the

contract were essentially 'established' in light of the evidence

submitted," as required by Commerce's regulation. Nakornthai, 558

F. Supp. 2d at 1328-29. Because Commerce again has failed to make

such a finding, this court again must remand this case.

The court's May 28 opinion made clear that substantial

evidence requires more than the mere assertion that the tolerance

levels were changed:

> Commerce argues that the fact that the quantity tolerance
> level was changed, in whatever amount, demonstrates that
> the contract's material terms were subject to change and
> therefore not finally settled until the invoice date.
> The problem with this argument is that it begs the

question of whether any such changes were insignificant.

Nakornthai, 558 F. Supp. 2d at 1328.  Thus, Commerce was directed to look at the specific evidence presented by Nakornthai to make a factual finding, in context, as to whether the change in the quantity actually shipped was significant, meaningful, or substantial.  This is the process of evaluation required by Commerce's own regulation, as well as the court's remand order.

Instead of heeding the court's instructions, Commerce's Remand Results declared that the change to the specific quantity shipped "is not [] relevant," and concluded that the "relevant change" was the elimination of the tolerance levels from the original contract. Remand Results at 5.  Commerce determined that the mere removal of the line-item quantity tolerance from the contract was significant because it "provided [Nakornthai] with the flexibility to affect the product mix and, in turn, the overall dumping margin," id., because "the product mix . . . is used for matching purposes and the overall margin calculation." Id. at 8.  Commerce then set forth a hypothetical example demonstrating how the tolerance removal "could conceivably" permit Nakornthai to alter product combinations in an effort to impact the overall dumping margin. Id. at 5.[5] While Commerce did state that "it is reasonable to characterize the

---

[5] Commerce did not consider the significance of the other two amendments to Nakornthai's contract, as Commerce "continue[s] to find that the change in line item tolerance was significant, per the Court's instructions." Id. at 4 n.1.

quantity change as significant," the agency did not provide a reasoned explanation on this issue, and immediately reiterated that this analysis "[was] not the basis" for its determination. Id. at 6.

It follows that Commerce's position simply restates its hypothetical contention, already rejected by the court, that "the relevant change was the elimination of the line item quantity tolerance level from the original contract, which can affect the product mix and dumping margin." Id. at 7.  Commerce again makes no factual finding as to whether the less than 0.1% difference in the total quantity shipped, that was 14.5% higher than the upper end of the original tolerance level for one item and more than 25% above the specific line-item quantity for that product, was of any significance in actual, not hypothetical, terms.  "Commerce's use of hypotheticals, generalizations . . . and conditional language suggesting possible distortions in antidumping calculations offer conjecture rather than a reasoned explanation founded on substantial evidence." Hynix Semiconductor, Inc. v. United States, 27 CIT 1719, 1722, 295 F. Supp. 2d 1365, 1369 (2003), rev'd in part, 424 F.3d 1363, 1370 (Fed. Cir. 2005).[6]  While Commerce may

_____

[6] Although the Federal Circuit reversed the U.S. Court of International Trade on the issue of whether Commerce presented substantial evidence for the agency's determination as to whether Hynix's change in accounting practices was distortive to the dumping margin, it was not because the Federal Circuit held that Commerce could exchange hypotheticals for a reasoned analysis of the evidence.  The reversal was based on the Federal Circuit's

not find this line of inquiry relevant, the court does, and when an
agency does not comply with the court's remand instructions, its
remand results will not be sustained. See <u>Fuyao Glass Indus. Group
Co. v. United States</u>, Slip. Op. 06-21, 2006 Ct. Intl. Trade LEXIS
21, at *19 (CIT Feb. 15, 2006) (remanding a case back to Commerce
for a third time because Commerce, among other things, failed to
comply with the court's remand instructions).

In considering Nakornthai's arguments and evidence, Commerce
"must explain its rationale . . . such that a court may follow and
review its line of analysis, its reasonable assumptions, and other
relevant considerations.  Explanation is necessary . . . for this
court to perform its statutory review function."  <u>Int'l Imaging
Materials, Inc. v. United States ITC</u>, 29 CIT __, Slip. Op. 06-11 at
13 (Jan. 23, 2006) (internal quotations omitted).  Because Commerce
failed to make a specific finding in this case and with regards to

---

holding that the change in the accounting methods was obviously
distortive: "it is facially apparent that a fraction of costs
does not accurately capture full costs." <u>Hynix Semiconductor,
Inc. v. United States</u>, 424 F.3d 1363, 1370 (Fed. Cir. 2005).
Thus, Commerce justifiably found under 19 U.S.C. § 1677b(f)(1)(A)
that a company's reported costs did not reasonably reflect the
costs of production. <u>Id</u>. As discussed in <u>Hyundai Electronics
Industry Co. v. United States</u>, 30 CIT __,  414 F. Supp. 2d 1289
(2006), the <u>Hynix</u> court excused Commerce from having to provide
any additional factual substantiation  because "such a recent
switch in these cost accounting practices is facially distortive
of antidumping calculations." <u>Id</u>. at 1295.  Though the Federal
Circuit in <u>Hynix</u> also encouraged this Court to defer to
Commerce's judgment even if the "inadequacy of this method were
not transparent," 424 F.3d at 1370, this promotion was due to
Commerce's experience with the specific calculations at issue in
the case.

Nakornthai's proffered evidence, "the existing record provides no rationale to serve as a basis for judicial review of the agency's action." <u>Habas Sinai Ve Tibbi Gazlar Istihsal Endustrisi A.S. v. United States</u>, Slip Op. 07-167, 2007 WL 3378201, at *7 (CIT Nov. 15, 2007).

Accordingly, the court will again remand this matter for the required findings. Because the agency has not yet made such findings, the court does not believe that another remand to Commerce would be "futile" in this instance. <u>See Nippon Steel Corp. v. United States</u> , 458 F.3d 1345, 1359 (Fed. Cir. 2006). <u>Cf</u>. <u>Altx, Inc. v. United States</u>, 370 F.3d 1108, 1111 (Fed. Cir. 2004). Rather, as required by the court's May 28 opinion, in reaching a determination in this case, Commerce must find Nakornthai-specific facts and must make factual findings as to Nakornthai's particular evidence.

Specifically, on this remand, Commerce must determine, and explain its rationale, as to whether the evidence presented by Nakornthai of the change in the quantity shipped was actually of any significance, and whether, in context, this change materially affected the date that the terms of the contract were essentially established.

### III. Commerce Properly Limited Its Date of Sale Inquiry to the Contract and Invoice Dates

In its May 28 opinion, the court precluded Nakornthai from suggesting alternative dates as potential dates of sale, as Nakornthai had failed to exhaust its administrative remedies on this issue. Nakornthai Strip Mill Pub. Co. v. United States, 32 CIT ___, 558 F. Supp. 2d 1319, 1330-31 (2008). Nevertheless, the court noted that "Commerce is still free on remand to determine . . . which date 'reflects the date on which the exporter or producer establish[ed] the material terms of sale.'" Id. Thus, the court permitted, but did not order, Commerce to examine alternative dates. In its Remand Results, Commerce chose to limit its "consideration of the appropriate date of sale to [the] initial contract date or [the] invoice date as allowed by the Court." Remand Results at 12. The court will not disturb Commerce's choice.

Nakornthai urges remand on its proffered alternative dates, arguing that Commerce simply dismissed Nakornthai's request to address the alternative dates without adequate and reasoned explanation. Pl.'s Comments at 9. However, Commerce acted within its discretion in refusing to address Nakornthai's proposed alternative dates. Commerce's regulations provide that any interested party may submit a case brief responding to the agency's preliminary investigation. 19 C.F.R. § 351.309(c)(1). The brief

"must present all arguments that continue in the submitter's view to be relevant to the Secretary's final determination or final results." Id. § 351.309(c)(2).  When a party is responding to an administrative review, the case brief must be submitted within 30 days after the date of publication of the preliminary results of review. Id. § 351.309(c)(1)(ii).  Nakornthai timely submitted a case brief, but the brief did not specifically include its arguments regarding alternative dates. Nakornthai, 558 F. Supp. 2d at 1330.  Thus, Nakornthai did not present Commerce with its alternative dates until after the case brief deadline had passed.

Consistent with the court's May 28 decision, Commerce could have evaluated the alternative dates on remand, and may again grant such consideration on further remand; however, it was and is under no obligation to do so.  The agency's regulations do "not require Commerce to accept new factual information beyond the established deadline for submitting such information." Yantai Timken Co. v. United States, 31 CIT __, 521 F. Supp. 2d 1356, 1371 (2007) (referring to 19 C.F.R. § 351.309(b)(1)).  The court has already determined that Commerce's choice of the invoice date over any other alternative involves factual components. Nakornthai, 558 F. Supp. 2d at 1330 n.11.  As such, in this instance, the court concludes that Commerce acted within its discretion, and in compliance with the agency's own regulations, to limit its remand

consideration to the timely-submitted arguments and evidence.[7]

Nakornthai further contends that a remand back to Commerce renders exhaustion arguments "moot," because Commerce, as the decision maker, is free to reconsider the issue. Pl.'s Comments at 10 (citing Gleason Indus. Prods., Inc. v. United States, __ CIT __, 556 F. Supp. 2d 1344, 1346 n.2 (2008)). Gleason, however, does not control this case and thus does not moot the exhaustion issue. The Gleason court rejected Defendant-Intervenor's exhaustion arguments because the earlier remand was pursuant to Commerce's own, voluntary request to review new issues raised by Gleason subsequent to Commerce's original determination. Gleason, 556 F. Supp. 2d at 1346 n.2 (citing Gleason Indus. Prods., Inc. v. United States, Slip Op. 07-40, 2007 WL 781196, at *5 (CIT Mar. 16, 2007)). Commerce considered these further elaborated issues because that was the

---

[7] While the court has occasionally required Commerce to examine newly-submitted information on remand, despite the lack of administrative exhaustion, those cases involved the correction of a clerical mistake such that the court would otherwise be knowingly affirming a determination with errors. See Hyundai Elecs. Indus. Co. v. United States, 29 CIT 981, 395 F. Supp. 2d 1231 (2005); Maui Pineapple Co. v. United States, 27 CIT 580, 264 F. Supp. 2d 1244 (2003); Serampore Indus. Pvt. Ltd. v. U.S. Dep't of Comm., 12 CIT 825, 696 F. Supp. 665 (1988). "Clerical" or "ministerial" errors are "error[s] in addition, subtraction, or other arithmetic function, clerical error[s] resulting from inaccurate copying, duplication, or the like, and any other similar type of unintentional error which the Secretary considers ministerial." Hyundai Elecs., 395 F. Supp. 2d at 1243 (quoting 19 C.F.R. § 351.224(f)). Commerce's decision to use invoice date as Nakornthai's date of sale involves "issues of methodology and fact" rather than "unintentional error." Id. at 1244. Therefore, Nakornthai's alternative dates do not involve potential clerical errors that would fall under this line of cases.

Court No. 07-00180                                          Page 20

specific purpose of the remand.  By contrast, the court ordered

remand in this case in order for Commerce to make a finding of fact

on the issues and arguments that the agency has already examined.

The court therefore rejects Nakornthai's third and final

ground for remand.

### Conclusion

Accordingly, this matter is remanded to Commerce for specific,

reasoned consideration of the evidence submitted by Nakornthai

regarding the significance, if any, of the actual change in the

quantity shipped, and whether this materially changed the date that

the terms of the contract were essentially established.  On remand,

Commerce may limit its examination of the appropriate date of sale

to the initial contract date or the invoice date.  Remand results

are due by January 26, 2009.  Comments on the remand results are

due by February 9, 2009.  Reply comments are due by February 16,

2009.


                                          /s/ Donald C. Pogue
                                          Donald C. Pogue, Judge


Dated:     November 24 , 2008
           New York, New York

# NOTICE OF ENTRY AND SERVICE

This is a notice that an order or judgment was entered in the docket of this action, and was served upon the parties on the date shown below.

Service was made by depositing a copy of this order or judgment, together with any papers required by USCIT Rule 79(c), in a securely closed envelope, proper postage attached, in a United States mail receptacle at One Federal Plaza, New York, New York 10278 and addressed to the attorney of record for each party at the address on the official docket in this action, except that service upon the United States was made by personally delivering a copy to the Attorney-In-Charge, International Trade Field Office, Civil Division, United States Department of Justice, 26 Federal Plaza, New York, New York 10278 or to a clerical employee designated, by the Attorney-In-Charge in a writing filed with the clerk of the court.

or

Service was made electronically, by the Court's CM/ECF system, upon those parties that have filed a Notice of Consent to Electronic Service.

Tina Potuto Kimble
Clerk of the Court

Date: _____     By: _____
                                              Deputy Clerk